IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 11, 2006

## JOHN W. CASEY v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Lauderdale County**
**No. 7520    Joseph H. Walker, Judge**

_____

**No. W2005-01591-CCA-R3-PC  - Filed May 2, 2006**

_____

The petitioner, John W. Casey, pled guilty in the Lauderdale County Circuit Court to possession of .5 grams or more of cocaine with the intent to sell and possession of drug paraphernalia. He received a total effective sentence of eight years. Subsequently, the petitioner filed a petition for post-conviction relief, alleging that his trial counsel was ineffective and his pleas were not knowing and voluntary. The post-conviction court denied the petition, and the petitioner appeals. Upon our review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ALAN E. GLENN and J.C. MCLIN, JJ., joined.

D. Michael Dunavant, Ripley, Tennessee, for the appellant, John W. Casey.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; Elizabeth T. Rice, District Attorney General, and Tracey A. Brewer-Walker, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

The petitioner was originally indicted for possession of cocaine with intent to deliver, possession of drug paraphernalia, and felony driving under the influence (DUI). On June 21, 2004, the petitioner pled guilty to Class B felony possession of cocaine with intent to deliver and to Class A misdemeanor possession of drug paraphernalia in exchange for the dismissal of the felony DUI

charge.[1]

At the guilty plea hearing, the State recited the following factual basis for the pleas:

> Your Honor, had the matter gone to trial, the State would have called James Smith and Lewis Ruff to the witness stand to have testified that James Smith on or about July 19[th], 2003, observed [the petitioner] leaving a drug – high drug trafficking area where he parked his vehicle down a steep hill in a dangerous position, that he observed him get outside that vehicle and go underneath his hood.
>
> When the officer approached, he discussed that he was obstructing traffic. [The petitioner] told him he was checking the oil but there was no light and this was close to midnight.
>
> Officer Lewis Ruff assisted him. Upon coming to the scene, there was a gun with ammunition that was found inside the vehicle. And at this time, Officer Ruff did look under the hood in the windshield wiper area and did in fact find cocaine or cocaine base . . . in the amount of [2.0] grams.

The petitioner received a sentence of eight years as a Range I standard offender for his cocaine conviction and eleven months and twenty-nine days for his drug paraphernalia conviction, with the sentences to be served concurrently. The petitioner entered the plea on the condition that the trial court would determine the manner of service of his sentence.

On June 29, 2004, the trial court conducted a sentencing hearing. The court found that the petitioner's history of substance abuse indicated that he had special needs as defined under Tennessee Code Annotated section 40-35-106(c) (2003). The court stated:

> Taking all those matters into consideration, the Court believes that the [petitioner] qualifies for an alternate sentencing agency, but I believe it wouldn't be proper just to release him to a house arrest program absent some serious drug counseling or drug abuse treatment.
>
> As you're aware, part of the alternate sentencing has to do with staying off of illegal drugs, being subject to drug screens to

---

[1]

Neither the petitioner's judgments of conviction nor his guilty plea agreements were included in the record for our review. However, we were able to glean the nature of his convictions from the transcript of the guilty plea hearing.

make sure that you're not using illegal drugs. And with the current addiction level, the Court doesn't believe [the petitioner] would be able to comply with alternate sentencing.

So the Court would consider a proposal, if he can work it out, after some time in jail for the [petitioner] to have some sort of intensive drug counseling before release back into the community. That can be in conjunction with an alternate sentencing, but I feel like the [petitioner] should come up with his suggested treatment program, not the court.

The petitioner did not appeal the sentences imposed.

Subsequently, the petitioner filed a petition for post-conviction relief, alleging that his trial counsel was ineffective and that his guilty pleas were not knowingly or voluntarily made. The petitioner alleged that counsel did not explain the consequences of his plea, nor did she ascertain that he had sufficient mental faculties to enter the pleas. The petitioner contended that because he was not sufficiently informed or capable of pleading, his guilty pleas were not knowingly and voluntarily entered.

At the post-conviction hearing, the petitioner's trial counsel testified that she had several telephone conversations with the petitioner during the course of her representation. She explained that it had been difficult to arrange face-to-face meetings with the petitioner. She filed either a motion to suppress or a motion to dismiss based upon the illegality of the stop. Counsel stated that the petitioner never expressed dissatisfaction with her representation.

Counsel recalled that the petitioner was adamant that he wanted to go to trial. He was especially concerned about the felony DUI charge. Counsel stated that the petitioner was concerned about losing his driver's license and the resulting effect on his employment. Because of his concerns, the petitioner was insistent that he would not plead guilty to the DUI charge. Accordingly, trial counsel prepared to go to trial.

Counsel recalled that, during the time leading up to trial, the State offered two proposed plea agreements. First, the State offered to allow the petitioner to plead guilty to Class C felony possession of cocaine with intent to deliver, with an accompanying sentence of six years, and to Class E felony DUI, with an accompanying sentence of two years. The State further offered to recommend that the sentences be served concurrently with "180 days suspended." The petitioner rejected the offer, again stating that he did not want to plead guilty to DUI. The State made a second offer which included dismissal of the DUI charge in exchange for the petitioner's guilty plea to Class B felony possession of cocaine with intent to deliver. The accompanying sentence would be eight years, to be served as a Range I standard offender, "with 180 days in jail." The petitioner rejected this offer as well, and counsel prepared for trial.

On the day of trial, as the jury voir dire was beginning, the petitioner asked counsel about the State's plea offers. Counsel requested and was granted a recess to discuss the matter with the petitioner. They went into another room, and counsel recounted the State's two offers. As another alternative, counsel discussed with the petitioner that "if he didn't want to accept the 180 days that he could plead to the eight years with the hope that the Court may give him less than the 180 days or some type of house arrest in lieu of jail time." Counsel testified that the requirement of serving 180 days in jail "was the element that [the petitioner] had problems with as far as doing that time in jail."

Counsel said that during the discussion the petitioner seemed excited, and he was trying to get his questions answered. She maintained that he did not seem confused, and he did not tell her that he was tired because he had stayed up late working on a car. Counsel stated that she was aware that the petitioner was addicted to cocaine. However, she was unaware, prior to his guilty pleas, that he was taking methadone for a heroin addiction. The petitioner never told counsel that he was taking any medication that would impair his ability to think. Counsel opined that the petitioner was panicked by the thought of facing a jury trial and a possible DUI conviction.

Counsel testified that she was not coercive during her discussions with the petitioner. She simply advised him of his options and allowed him to decide whether to plead or proceed to trial. The petitioner "did not want to accept the 180 days, so he felt like he wanted to just accept the eight years and the dismissal of the DUI and then have a separate hearing as far as jail time and other alternatives." The petitioner told counsel that he wanted to request placement in a drug rehabilitation program. Counsel advised the petitioner that she could not guarantee that the trial court would make such a placement.

The petitioner pled guilty to Class B felony possession of .5 grams or more of cocaine with the intent to deliver and Class A misdemeanor possession of drug paraphernalia. The petitioner was immediately taken into custody. Counsel could not recall if she had advised the petitioner that he could be taken into custody following his pleas. She also did not recall whether the petitioner wanted to withdraw his plea after he discovered he was being taken into custody.

At the sentencing hearing, the trial court imposed an eight-year sentence for the cocaine conviction and designated the petitioner a Range I standard offender eligible for release after serving thirty percent of his sentence in confinement. Counsel remembered that "the Court indicated in its Order that, after he served six months in jail and if he had a residential rehabilitation program to go to, it would consider suspending the sentence or placing him on alternative sentencing." The petitioner was unhappy because he had to spend time in jail. Counsel and the petitioner began discussing rehabilitation programs such as Crossroads or Buffalo Valley. Counsel asserted that the rehabilitation program was not part of the plea agreement with the State.

Counsel stated that she was aware that after an individual is transferred to the Tennessee Department of Correction to serve his sentence, that person is "no longer eligible for a suspended sentence or rehabilitation or anything like that." Counsel maintained, "I did not believe that that was

going to be a problem in light of the fact that the Court had put that in its order. But, you know, I don't have control over behavior in the jail or medical issues or things of that nature that causes an inmate to be transferred." Counsel knew that the petitioner went into jail on methadone, and she assumed that the petitioner had been taking methadone at the time of his pleas.

After the petitioner served approximately 150 days of his sentence in jail, he was transferred into the custody of the Tennessee Department of Correction. Counsel was not notified until the transfer was completed, and she was not told the reason for the transfer. Counsel explained that a residential rehabilitation program had not yet been scheduled for the petitioner, as they would not reserve a bed for him until closer to his release date.

After the petitioner's transfer to the Tennessee Department of Correction, counsel contacted the trial court to ask whether the petitioner could still be transferred into a residential rehabilitation program. The trial court informed counsel that it had lost jurisdiction to grant alternative sentencing after the petitioner had been transferred into the custody of the Tennessee Department of Correction. Counsel passed this news on to the petitioner and his parents. The petitioner's parents were upset that the petitioner would have to serve his sentence in confinement until he was granted parole. Counsel opined that she could not have done anything differently to ensure that the petitioner got into a residential rehabilitation program.

At the conclusion of her testimony, counsel testified:

> Him pleading guilty was his choice. I advised him of the different options. His choice to try to go to the Court on jail time and alternative sentencing instead of taking the guaranteed 180 days that would have put him out on house arrest, that was his decision. He thought he could do better going through the Court.
>
> You know, the only thing that might have changed my advice to him is that he did not disclose his heroin addiction or the Methadone. I did not find out about that until we were at the alternative sentencing hearing and I read the report, and it was contained in there.

Rhonda Mullins, a nurse with the Lauderdale County Jail, testified that she had treated the petitioner while he was at the jail. The petitioner came into the jail on methadone for a heroin addiction. After an evaluation, the petitioner's methadone treatment was continued in jail. Mullins stated that she had no independent recollection of why the petitioner was transferred to the Tennessee Department of Correction. However, Mullins said that sometimes a transfer is effected when an individual requires medical attention or medicine and that individual is eligible to go to the Tennessee Department of Correction.

The petitioner's mother, Shirley Casey, testified that she was not present on the day the

petitioner entered his guilty pleas. Casey did not know if the petitioner was taking methadone at the time of his pleas, but she was aware that the petitioner had drug problems. Casey did not recall having contact with counsel prior to the pleas. Afterward, Casey tried to call counsel several times.

Casey stated that she "understood" that the petitioner's sentence "would be 180 days, plus then there would be rehab." She said that she believed the petitioner could possibly get into the rehabilitation program at Crossroads after he served 180 days in jail. She maintained that for admittance into a rehabilitation program, the petitioner had to be close to his release date. Casey testified that counsel called her after the petitioner was transferred to the Tennessee Department of Correction to say that there was nothing she could do to get the petitioner out and into a rehabilitation program at that point. Casey noted that the petitioner had started a rehabilitation program in the penitentiary.

The petitioner testified that he was originally indicted for felony cocaine possession and felony DUI. He was prepared to go to trial on those charges. The petitioner stated that he heard about one offer from the State, "the dismiss DUI with 180 days in the county jail." He said that he initially turned down that offer because he felt that a jury needed to hear his case.

The petitioner stated that the night before trial was scheduled to begin, he stayed up all night painting a car for work. The petitioner stated that he was also on methadone at the time of his pleas. The petitioner said that the methadone made him feel "[s]omewhat disoriented." The petitioner stated that on the day of trial, he knew he could be taken into custody that day. He went into court, not intending to plead guilty. He said that counsel talked him out of going to trial. The petitioner stated that counsel did not force him to plead, but she "coerced me to . . . . She told me that the people – that the jury would know who gave me the cocaine and that I might lose my license for five years and I might get more time." Regardless, the petitioner admitted that it was his decision to plead guilty.

The petitioner testified that after he served 150 days in the Lauderdale County Jail, he was transferred to the Tennessee Department of Correction. He did not know about the transfer until the night before it happened. He thought his transfer "was to get me off the Methadone." The petitioner stated that he "understood that I was supposed to do six months in the county jail and then go to rehab." He maintained that he believed counsel promised him that he would be released from incarceration for rehabilitation. He said that he was not currently using methadone and had started a treatment program in the penitentiary.

The petitioner stated that he felt that counsel was ineffective because "I should not have been sent to the penitentiary." He said that he wanted the opportunity to serve the sentence that was imposed, which sentence he believed was service of 180 days then release for a residential rehabilitation program. The petitioner said that he had trusted counsel to "handle my case properly," but he did not feel that she had done so. Finally, the following colloquy occurred between the petitioner and his post-conviction counsel:

Q. Mr. Casey, on June 21, 2004, if you had known that you would not be allowed to have the opportunity to serve the entire 180 days and get rehab, would you have entered that guilty plea?

A. No.

Q. Would you have demanded to go to a jury trial?

A. Yes.

At the conclusion of the post-conviction hearing, the post-conviction court denied the petition for relief. The court found that the petitioner failed to establish that counsel was ineffective or that his pleas were not knowing and voluntary. The petitioner now appeals that ruling.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

"To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct.

366, 370 (1985). Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).

To pass constitutional muster, a guilty plea must be made voluntarily, understandingly, and knowingly. Hicks, 983 S.W.2d at 246 (citing Boykin v. Alabama, 395 U.S. 238, 244, 89 S. Ct. 1709, 1713 (1969)); see also State v. Mackey, 553 S.W.2d 337, 341 (Tenn. 1977). To determine the voluntariness and intelligence behind a guilty plea, the court must look to various circumstantial factors, i.e.,

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

On appeal, the petitioner argues that counsel failed to fully explain the consequences of his pleas, namely that he would not have a rehearing on alternative sentencing in the event that he was transferred into the custody of the Tennessee Department of Correction. The petitioner states that because he was unaware of this risk, his pleas were not knowingly and voluntarily entered. The petitioner also complains that his pleas were not knowing and voluntary because he was on methadone at the time he pled guilty, and the medication adversely affected his ability to think. The petitioner alleges that counsel was ineffective in failing to ascertain the effect methadone had on his ability to understand his pleas and "by taking advantage of his diminished capacity to influence and coerce him into signing a guilty plea which he did not understand and to which he did not agree."

At the conclusion of the post-conviction hearing, the post-conviction court accredited counsel's testimony "that the plea agreement was not contingent upon the [petitioner] getting drug rehab." The post-conviction court found that the petitioner freely and voluntarily pled guilty after being questioned by the trial court about his knowledge of his rights. The post-conviction court stated:

[A]t the plea hearing [the petitioner] stated he understood he was receiving a sentence of 8 years. He was not guaranteed any relief from sentence and it was not a part of the bargain for the plea that he receive counseling or drug treatment. He did not disclose to his trial counsel that he had an addiction and was being treated with methadone. His trial counsel had no control over whether the Court decided to grant alternate sentencing. She represented the petitioner adequately at the hearing. While the Court indicated that he might receive alternate sentencing after six months in jail "if he can present a treatment program sufficient for his needs," there was no adequate placement available or presented for the petitioner, and he was transferred to TDOC and is receiving treatment.

. . . .

It is not ineffective assistance of counsel to discuss the options with a client and make an informed decision, which was done in this case. An informed decision was made to accept the State's offer of the eight year sentence, providing the felony DUI be dismissed. The sentence was agreed upon. The [petitioner] admitted his guilt.

The Court finds that Petitioner was adequately informed of the nature and consequences of the plea agreement, and the punishment to be received. [Counsel] made adequate investigation of the facts and was prepared for trial that day.

The Court finds that the [petitioner] actually understood the significance and consequences of the particular decision to plea[d] guilty and the decision was not coerced. The [petitioner] was fully aware of the direct consequences of the plea. The [petitioner] had been through plea proceedings on prior occasions, and was aware of the nature of the proceedings and made a decision to enter a plea of guilty freely and voluntarily. He was informed at the plea hearing of the sentence.

After our review of the record, we agree with the post-conviction court. There is nothing in the record to indicate that the petitioner's guilty pleas were contingent upon the availability of alternative sentencing. In fact, counsel testified that the petitioner agreed to a sentence of eight years with the trial court to determine the manner of sentencing in an attempt for leniency. The petitioner gambled for a more lenient sentence than the State originally offered, and he lost. The petitioner's choice does not render his counsel ineffective or his pleas involuntary. See Donald Mitchell Green v. State, No. E2002-02517-CCA-R3-PC, 2003 WL 22102861, at *6 (Tenn. Crim. App. at Knoxville, Sept. 11, 2003). Moreover, by finding that the petitioner understood the nature of his pleas, the post-

conviction court implicitly found that the petitioner's decision was not influenced by the methadone. Notably, the petitioner never definitively stated that the methadone he had taken made it impossible for him to understand his pleas. The petitioner has failed to demonstrate that his counsel was ineffective or that his pleas were not knowing and voluntary. Thus, he is not entitled to relief.

### III. Conclusion

Finding no error, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE